UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUCSHEENA N. o/b/o I.A.K.W.,

                Plaintiff,

-v-

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

6:20-CV-6760-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. § 636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 14)

Plaintiff Lucsheena N.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) on behalf of her child, I.A.K.W., seeking judicial review of the final decision of the Commissioner of Social Security denying I.A.K.W. Supplemental Security Income Benefits ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 11) is granted, the Commissioner's motion is denied (Dkt. No. 12), and the case is remanded to the Commissioner for further proceedings.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only her first name and last initial.

## BACKGROUND[2]

On November 28, 2016, plaintiff Lucsheena N. filed an SSI application on behalf of her child, I.A.K.W., alleging that I.A.K.W. has been disabled since March 1, 2016 due to a hearing impairment and asthma.[3] (Tr. 118-23) The application was initially denied on June 30, 2017, and plaintiff timely requested a hearing before an administrative law judge. (Tr. 61-70) On December 12, 2018, plaintiff and I.A.K.W. appeared before Administrative Law Judge Theodore Kim for a video hearing. (Tr. 36-51) Plaintiff and I.A.K.W were not represented. (*Id.*) On September 19, 2019, ALJ Kim issued a decision denying I.A.K.W.'s SSI claim. (Tr. 10-24) The Appeals Council denied plaintiff's request for review on July 27, 2020. (Tr. 1-6) This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. § 405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the

---

[2] The Court assumes the parties' familiarity with I.A.K.W.'s medical records and educational history, which are summarized in the moving papers. The Court has reviewed the medical and school records, but cites only those portions that are relevant to the instant decision.
[3] References to "Tr," are to the administrative record in this case.

2

Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (WDNY 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.    <u>Standards for Determining "Disability" Under the Act</u>

An individual under the age of eighteen is considered disabled within the meaning of the Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Commissioner has set forth a three-step process to determine whether a child is disabled as defined under the Act.

*See* 20 C.F.R. § 416.924. At step one, the ALJ determines whether the child is engaged in substantial gainful work activity. *Id.* § 416.924(b). If so, the child is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the child has a medically determinable impairment(s) that is "severe." *Id.* § 416.924(c). If the child does not have a severe impairment(s), he or she is not disabled. *Id.* If the child does have a severe impairment(s), the ALJ continues to step three. At step three, the ALJ examines whether the child's impairment(s) meets, medically equals, or functionally equals the listed impairments in Appendix 1 to Subpart P of Part 404 of the Commissioner's regulations (the "Listings"). *Id.* § 416.924(d). In determining whether an impairment(s) functionally equals the Listings, the ALJ must assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi). To functionally equal the Listings, the child's impairment(s) must result in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A child has a "marked" limitation when his or her impairment(s) "interferes seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2). A child has an "extreme" limitation when his or her impairment(s) "interferes very seriously" with his or her ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3). If the child has an impairment(s) that meets, medically equals, or functionally equals the Listings, and the impairment(s) meets the Act's duration requirement, the ALJ will find the child disabled. *Id.* § 416.924(d).

III.   *The ALJ's Decision*

The ALJ first noted that I.A.K.W. was born on August 23, 2014, and therefore was an older infant on the date of the disability application and a preschooler on the date of the hearing as well as the ALJ's decision. (Tr. 13, 44, 52) The ALJ then followed the three-step process for evaluating I.A.K.W.'s SSI claim. At the first step, ALJ Kim found that I.A.K.W. has not engaged in substantial gainful activity since the date of his SSI application. (Tr. 13) At the second step, the ALJ determined that I.A.K.W. has the severe impairments of bilateral hearing loss; asthma; repetitive speech delay; and speech articulation delay. (*Id.*) At the third step, ALJ Kim found that I.A.K.W. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14) ALJ Kim then concluded that I.A.K.W. does not have an impairment or combination of impairments that functionally equals the severity of the listings, because I.A.K.W. does not have an impairment or combination of impairments that result in either marked limitation in two domains of functioning or extreme limitation in one domain of functioning. (Tr. 14-24) Specifically, ALJ Kim determined that I.A.K.W.'s impairments cause less than a marked limitation in acquiring and using information; attending and completing tasks; moving about and manipulating objects; and health and physical well-being. (*Id.*) The ALJ also found that I.A.K.W. has no limitations in interacting and relating with others and caring for himself. (Tr. 17-24) As a result, ALJ Kim determined that I.A.K.W. has not been disabled within the meaning of the Act since the application date. (Tr. 24)

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred by failing to properly weigh the opinion of I.A.K.W.'s teacher, in that he cherry-picked certain portions of the teacher's opinion and ignored others, in order to reach a determination that I.A.K.W. was not disabled. (*See* Dkt. No. 11-1 (Plaintiff's Memo. of Law)) For the following reasons, the Court agrees, and finds that remand is necessary.

The ALJ must consider all relevant medical and other evidence. *See* 20 C.F.R. § 416.945(a)(3). The SSA classifies teachers as "non-medical sources" and has explained that they are "valuable sources of evidence for assessing impairment severity and functioning." *See* Social Security Ruling ("SSR") 06-03p, 2006 SSR LEXIS 5, 2006 WL 2329939, at *3 (Aug. 9, 2006). Moreover, "[w]hen reviewing a child's impairments for functional equivalence, adjudicators must consider 'all of the relevant evidence,' and employ a 'whole child' approach." *Carrera v. Colvin*, 1:13-cv-1414, 2015 U.S. Dist. LEXIS 31073 (N.D.N.Y. Mar. 12, 2015). "All of the relevant evidence includes objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teacher[s], family members, or friends; the claimant's statement (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how claimant functions over time and in all settings (i.e., at home, at school, and in the community)." *Id.* at n. 8; *accord* SSR 2009-2p, 2009 SSR LEXIS 2, *7 (SSA Feb. 18, 2009). Courts in this Circuit have recognized that reports from a child claimant's teacher should be "afforded significant weight" when the reporting teacher had an extended opportunity to observe the claimant's functioning. *Titus v. Colvin*, 12-CV-1056, 2013 U.S. Dist. LEXIS 185804 (N.D.N.Y. Nov. 13, 2013);

*citing Edmond v. Barnhart*, 04-CV-6515, 2006 U.S. Dist. LEXIS 69169 (W.D.N.Y. Aug. 9, 2006) ("The Commissioner encourages the use of non-medical evidence provided by a teacher, who works with a child on a daily basis and observes him in a social setting with peers as well as adults.").

In considering evidence, ALJ's are "not required to reconcile every shred of evidence", but they must still "acknowledge relevant evidence and explain [their] rejection of it." *Nivia D. o/b/o P.L.D. v. Comm'r of Soc. Sec.*, 5:18-CV-0634, 2019 WL 4573262, at *6 (N.D.N.Y. Sept. 20, 2019) (internal citations omitted). Thus, an ALJ cannot "pick and choose evidence in the record that supports his conclusions." *Cruz v. Burnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004). Stated another way, "[i]n evaluating the domains of functioning, ALJ's may not 'cherry pick' evidence by crediting evidence that supports administrative findings while ignoring conflicting evidence from the same source." *Goins o/b/o J.D.G. v. Berryhill*, 6:16-CV-06398, 2017 WL 5019273, at *4 (W.D.N.Y. Nov. 3, 2017) (internal citations and quotations omitted). "'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id.*; *citing Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010).

On May 3, 2017, Joretha Spann, I.A.K.W.'s child-care provider and teacher at Bundle of Joy, completed a teacher questionnaire. (Tr. 142-49) Spann indicated that she is I.A.K.W.'s daycare teacher, and that she cares for I.A.K.W. every Monday through Friday, from 9:00 a.m. to 4:00 p.m. (*Id.* at 142) Spann indicated that I.A.K.W. receives Early Intervention Program services once a week for speech therapy and special education. (*Id.* at 143) Spann also assessed I.A.K.W.'s abilities in each of the functional

domains and noted that I.A.K.W. had various degrees of problems functioning in each area. (*Id.* at 142-49)

In accordance with the regulations discussed above, the ALJ considered Spann's opinion when evaluating each of the functional domains. In fact, he cited extensively to Spann's teacher questionnaire throughout his decision. However, a close reading of the decision shows that the ALJ credited only those portions of Spann's opinion that supported his findings that I.A.K.W. had either a less than marked limitation or no limitation in certain domains, and that he ignored or dismissed the portions of Spann's opinion that indicated I.A.K.W. had greater limitations in those same areas. This error was compounded by the fact that other evidence in the record supported a finding of greater limitations in some areas. This error was also problematic in that, with respect to some of the domains, it appears that the only evidence the ALJ considered was the "cherry-picked" portion of Spann's opinion. The result was a disability determination that was not based on substantial evidence. The ALJ's errors in crediting only those portions of Spann's opinion that supported his findings, while ignoring conflicting evidence from Spann's opinion, are explained, with respect to each relevant domain, in turn below.

### *Acquiring and Using Information*

Acquiring and using information concerns how well a child is able to acquire or learn information, and how well a child uses the information he has learned. (Tr. 17) This domain involves how well children perceive, think about, remember, and use information in all settings, which include daily activities at home, at school, and in the community. *See* 20 C.F.R. 416.926a(g).

In determining that I.A.K.W. had less than marked limitations in this domain, the ALJ expressly relied on portions of Spann's opinion that I.A.K.W. had no issues comprehending oral instructions, learning new material, and recalling and applying previously learned material; and that I.A.K.W. had only a slight problem applying problem solving skills. (Tr. 18, 147) However, the ALJ seemed to ignore the more limiting aspects of Spann's opinion which indicated that I.A.K.W. had *very* serious problems in understanding school content and vocabulary; understanding and participating in class discussions; and providing organized oral explanations and adequate descriptions.[4] (Tr. 147) Indeed, the ALJ did not explain why he apparently discounted these more serious limitations, nor did he cite evidence in the record which contradicted these findings. *See Goins o/b/o J.D.G. v. Berryhill*, 2017 WL 5019273, at *4. (Remanding where "there was no evidence that the ALJ considered anything other than reports in record evidence that supported a finding of a less than marked limitation, while ignoring conflicting evidence in some of those same reports.").

The ALJ also appears to have ignored, or failed to reconcile, other evidence in the record that would support those portions of Spann's opinion reflecting that I.A.K.W. had more significant limitations in acquiring and using information than accounted for by the ALJ. Indeed, "[a] child may be limited in Acquiring and Using Information if [his] expressive and language skills are lower than the expected level of functioning for [his] age. Examples include[e] a child who does not use language appropriate for [his] age, has difficulty explaining things or comprehending directions, or talks only in short, simple

---

[4] It is noted that with respect to the category of "understanding school content and vocabulary", it appears that the ALJ mistakenly marked the boxes for both "no problem" and a "very serious problem." The Court concludes that a finding of "more serious problem" in this category is more consistent with the other evidence in the record and the rest of Spann's opinion as a whole.

9

sentences." *Pomales v. Comm'r of Soc. Sec.*, 18-CV-851, 2019 U.S. Dist. LEXIS 208980 (W.D.N.Y. Dec. 4, 2019) *(citing* SSR 09-3P, 2009 SSR LEXIS 3 (Feb. 17, 2009)). As noted above, I.A.K.W. received special education and speech therapy. In the April 2017 Function Report, plaintiff noted that I.A.K.W. does not follow simple one-step or two-step directions; does not know, and cannot point to, parts of his face or body when asked; does not use his own name or refer to himself; and does not listen for at least 5 minutes to stories being read. (Tr. 129) Likewise, plaintiff testified that I.A.K.W. has a hearing disability that affects his speech, how he expresses himself and how he behaves. (Tr. 46) Moreover, on June 22, 2017, I.A.K.W. underwent a speech and language consultative examination with Matydel Wypych, M.S., CCC-SLP. (Tr. 242-47) Wypych opined that I.A.K.W. had a mild delay in receptive language skills and a moderate delay in expressive language skills. (*Id.*) She further opined that I.A.K.W. demonstrated significant speech-sound errors and difficulties combining sounds into intelligible phrases, and that these impairments may adversely affect his academic performance, life experiences, ability to be understood by others, and communication at an age-appropriate level. (*Id.*) She noted that I.A.K.W. had significant impairment in his expressive language abilities and speech articulation. (Tr. 246-47)

In sum, in evaluating I.A.K.W.'s ability to acquire and use information, the ALJ cherry-picked only the most favorable parts of Spann's opinion and did not account for evidence of I.A.K.W.'s receptive language delay and speech articulation delay. Thus, the assessment of this domain is not supported by substantial evidence.

### *Attending and Completing Tasks*

The domain of attending and completing tasks considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the mental pace at which he performs activities and the ease of changing activities. (Tr. 19) Social Security regulations provide that a preschooler without an impairment should be able to sustain attention to play and learning activities. *See* 20 C.F.R. §416.926a(h)(2)(iii). The child should also be capable of waiting his turn and changing activities when a caregiver or teacher says it is time to do something else. *Id.*

In evaluating this domain, the ALJ noted that Spann found I.A.K.W. to have "some issues" paying attention, sustaining an activity, focusing, refocusing, and waiting to take turns. (Tr. 19) Based on this characterization of Spann's opinion, the ALJ concluded that I.A.K.W. had less than marked limitations in attending and completing tasks. However, the ALJ failed to acknowledge that Spann actually opined that I.A.K.W. had an obvious, daily problem with refocusing on a task when necessary; a serious, daily problem with changing from one activity to another without being disruptive; and a very serious, daily problem with waiting to take turns. Here again, it appears the ALJ ignored the more limiting, or more severe, aspects of Spann's opinion, resulting in a finding that was not supported by substantial evidence. *See Martinbeault ex rel. R.J.M. v. Astrue*, 07-CV-1297, 2009 U.S. Dist. LEXIS 116246 (N.D.N.Y. Oct. 27, 2009) (teacher's observations that claimant had serious or very serious problems in a number of the sub-activities of the domain did not appear to support the ALJ's ultimate conclusion that claimant had a less than marked limitation in acquiring and using information, given the ALJ's inappropriately selective reliance on parts of the teacher's report).

11

### *Interacting and Relating with Others*

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, and comply with rules. (Tr. 20) Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community. *See* 20 C.F.R. § 416.926a(i). Social Security rules provide that a preschooler without an impairment should be able to socialize with other children and adults. *See* 20 C.F.R. §416.926a(i)(2)(iii). The child should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time. *Id.*

In determining that I.A.K.W. had no limitation in interacting and relating with others, the ALJ cited Spann's opinion that I.A.K.W. had no issues with making and keeping friends as well as maintaining topics of conversation, and that he had "somewhat unclear language skills." (Tr. 21) However, the ALJ failed to acknowledge that Spann further found that I.A.K.W. had daily, serious problems in respecting and obeying adults, taking turns in a conversation, and relating experiences and telling stories. (Tr. 146) The ALJ also failed to acknowledge, and by extension to account for, Spann's finding that I.A.K.W. had a very serious, daily problem with expressing anger appropriately. (*Id.*) The ALJ also failed to acknowledge, and by extension account for, Spann's opinion that (1) very little of I.A.K.W.'s speech could be understood by a familiar listener, on the first attempt, when the topic of conversation was known or unknown and (2) very little of I.A.K.W.'s speech could be understood, by a familiar listener, after repetition and/or rephrasing. (Tr. 144)

Likewise, plaintiff reported in the function report that I.A.K.W.'s speech was "hardly ever" understood by people who do not know him well. (Tr. 182)

Children who have language impairments often have limitations in both the domains of acquiring and using information and interacting and relating with others. *See Smith o/b/o B.L.S. Berryhill*, 16-CV-00203, 2019 WL 1486680, *5 (W.D.N.Y. Apr. 4, 2019); *accord Kittles ex re. Lawton v. Barnhart*, 245 F. Supp. 2d 479, 489 (E.D.N.Y. 2003). "Accordingly, the SSA now takes the position that a child with speech-language deficits at the marked level will normally be found to have a marked limitation in the domain of interacting and relating with others, even though socially well-behaved." *McClain v. Barnhart*, 299 F.Supp.2d 309, 326 n. 18 (S.D.N.Y. 2014). Here, the ALJ not only cherry-picked only the most favorable parts of Spann's opinion, but he also failed to fully account for other evidence in the record which clearly demonstrated that I.A.K.W. had significant speech and language impairments. Thus, the ALJ's finding that I.A.K.W. had no limitations in interacting and relating with others was not supported by substantial evidence. *Dabul-Montini ex rel. N.D.*, 09-CV-966, 2010 U.S. Dist. LEXIS 92685, 2010 WL 3584348, at *7 (N.D.N.Y. July 30, 2010) (recommending remand where "although [the ALJ] referenced the findings of [claimant's teacher] in his general discussion of the evidence[,] the ALJ made no attempt to reconcile [the teacher's] dramatic findings with his 'less than marked limitation' assessment").

<u>Caring for Yourself</u>

The domain of caring for yourself considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies his wants and needs in appropriate ways. (Tr. 22) This includes how well the child copes with stress and changes

in the environment and how well the child takes care of his own health, possessions, and living area. *See* 20 C.F.R. § 416.926a(k).

In determining that I.A.K.W. had no limitations in caring for himself, the ALJ noted that Spann's teacher questionnaire concluded that I.K.A.W. had no issues caring for his physical needs and only slight issues with judgment, personal safety, and coping skills. (Tr. 23) The ALJ also noted that Spann found that I.K.A.W. had "a more serious problem" handling frustration and responding appropriately to changes in this own mood. (*Id.*) Here again, it appears that the ALJ highlighted only those portions of the teacher opinion that supported a finding of little to no limitations while ignoring or downplaying the conflicting findings. The ALJ actually found that I.K.A.W. had obvious, daily problems with being patient when necessary and identifying and appropriately asserting emotional needs. (Tr. 148) Spann also found that I.A.K.W. had a serious, daily problem with handling frustration appropriately and responding to changes in his own mood. (Tr. 146) Spann also noted, on a different section of the questionnaire, that it had been necessary to implement behavior modification strategies for I.K.A.W., which included removing him from particular areas when he threw things and toys. Indeed, the ALJ failed to reconcile the portions of Spann's opinion finding that I.K.A.W. had at least some limitations in caring for himself with his conclusion that I.K.A.W. had no limitations in this domain. Thus, it cannot be said that this determination was supported by substantial evidence. *See also Sabrina L o/b/o T.L. v. Berryhill*, 1:17-CV-00542, 2018 WL 6521760, at *13 (W.D.N.Y. Dec. 12, 2018) (remanding for lack of substantial evidence to support the decision in part because "[a]lthough the ALJ's observations are accurate, they reflect only the most favorable parts of the record.").

In sum, the ALJ's cherry-picking of Spann's opinion and failure to reconcile the favorable portions of Spann's opinion with conflicting evidence in the record resulted in a determination that was not supported by substantial evidence. On remand, the Commissioner should re-evaluate the domains of acquiring and using information; attending and completing tasks; interacting and relating with others; and caring for himself. The Commissioner should evaluate these domains in light of Joretha Spann's Teacher Questionnaire in its entirety in conjunction with the other evidence in the record, including all evidence pertaining to I.A.K.W.'s speech and language delays.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is granted (Dkt. No. 11), defendant's motion for judgment on the pleadings is denied (Dkt. No. 12), and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

Dated:   September 29, 2022
         Buffalo, New York

*[signature]*
MICHAEL J. ROEMER
United States Magistrate Judge